The Honorable David Malone State Senator P.O. Box 1048 Fayetteville, AR 72702-1048
Dear Senator Malone:
This is in response to your request for an opinion on the following questions:
 1. What information, including subscriber information (name, address and telephone number) and tape recordings of 911 calls, may be released to the police or any member of the public pursuant to the terms of the Arkansas Public Safety Communications Act, A.C.A. 12-10-301 et seq. ["the Act"].
 2. Does the Arkansas Freedom of Information Act require the release of any of the above information and if so under what circumstances?
With regard to your first question, although it initially appears that you have asked what information, generally, may be released pursuant to the Act, I assume that your inquiry in fact focuses on "subscriber information" (A.C.A. 12-10-317 (Cum. Supp. 1993) and 911 recordings (A.C.A. 12-10-310 (1987)). The Act does not contain a general provision addressing release of information.[1]
With regard to "subscriber information," A.C.A. 12-10-317 (Cum. Supp. 1993) states in relevant part:
 (a)(1) Each service provider shall forward to any PSAP equipped for enhanced 911 service the telephone number and street address of any telephone used to place a 911 call.
 (2) Subscriber information provided in accordance with this subsection shall be used only for the purpose of responding to requests for emergency service from public or private safety agencies, for the investigation of false or intentionally misleading reports of incidents requiring emergency service response, or for other lawful purposes.
 (3) No service provider, agents of a service provider, political subdivision, or officials or employees of a political subdivision shall be liable to any person who uses the enhanced 911 service established under this subchapter for release of the information specified in this section or for failure of equipment or procedure in connection with enhanced 911 service or basic 911 service.
With regard to 12-10-316, this provision authorizes the designation of 911 public safety communication centers as "information provider[s]" to "authorized recipients" of ACIC files. Contrary to the statements in Op. Att'y Gen. 93-126, therefore, this provision does not address access to information that may be maintained by the 911 communications center. See Op. 93-126 at 3-4 (copy enclosed). Opinion 93-126 is hereby modified to that extent. The opinion does, however, correctly identify those who are authorized "end users." See A.C.A. 12-10-316(b) and Opinion 93-126 at 4. The purpose of 12-10-316, therefore, is to authorize the 911 communication centers to access files available through ACIC for the purpose of providing that information to those who may lawfully receive it.
Please note that I have enclosed copies of Attorney General Opinions 90-236 and 93-126 wherein it is concluded that the subscriber information forwarded under 12-10-317 to public safety answering points ("PSAP") in all likelihood is not subject to public disclosure except in accordance with those purposes set out in 12-10-317(a)(2). Subsection (a)(2) refers to the "[s]ubscriber information provided in accordance with this subsection." See also 12-10-317(a)(3) (regarding release of "the information specified in this section. . . .") This language may reasonably be construed to refer to the information required under subsection (a)(1) of 12-10-317, i.e., the telephone number and street address of any telephone used to place a 911 call. If a service provider forwards additional information to a PSAP regarding the telephone used to place a 911 call, e.g., the name of the subscriber, this information is probably also included in subsection (a)(2) of 12-10-317.
As stated in Opinions 90-236 and 93-126, Section 12-10-317
appears to create an exception to the Arkansas Freedom of Information Act ("FOIA"). Thus, the information that is forwarded to a PSAP by a service provider may only be released for the purposes set forth in 12-10-317(a)(2). While this would not include release to the general public, it would, in my opinion, include release to the police, assuming that the information is to be used for official purposes. This conclusion follows from the statutory construction doctrine of "ejusdem generis," under which general words are construed to embrace only objects similar in nature to those objects enumerated by preceding specific words. See generally Woodruff v. Shockey, 297 Ark. 595, 598,764 S.W.2d 431 (1989), citing 2A Singer, Sutherland Statutory Construction 47.17 (4th ed. 1912). Law enforcement reasonably falls within the same general object or purpose as those specifically mentioned in subsection (a)(2) of 12-10-317.
With regard to tape recordings of 911 calls, it must be initially noted that the Act does not address release of these records. The requirement that 911 calls be recorded is found at A.C.A.12-10-310 (1987), which states:
 (a) The 911 public safety communication center shall develop and maintain a system for recording 911 calls received at the public safety answering point (PSAP). A magnetic tape will satisfy this requirement.
 (b) The records shall be retained for a period of at least thirty-one (31) days from the date of the call and shall include the following information:
(1) Date and time the call was received;
(2) The nature of the problem;
 (3) Action taken by the 911 public safety communication center personnel.
There is no requirement in the Public Safety Communications Act that the 911 recordings be released upon request. It was concluded in Attorney General Opinion 90-236, however, that the recorded 911 calls of a publicly supported 911 communications center would constitute "public records" for purposes of the FOIA. See Opinion 90-236 at 2, citing A.C.A. 25-19-103(1). See also Sebastian County Chapter of the American Red Cross v. Weatherford, 311 Ark. 656, 846 S.W.2d 641 (1993) (regarding requirement of direct public funding). In the absence of an exemption, therefore, these records will be open to public inspection and copying.
It should be noted in this regard that the FOIA contains a provision recognizing "specifically enacted" exceptions from disclosure. A.C.A. 25-19-105(a) (Supp. 1993). It is my opinion, however, that no such exception exists with respect to the recorded 911 calls.[2] The Arkansas Supreme Court has generally held that any provision exempting records from disclosure must be narrowly construed. See Laman v. McCord,245 Ark. 401, 432 S.W.2d 753 (1968); Ragland v. Yeargan, 288 Ark. 81,702 S.W.2d 23 (1986); Troutt Brothers, Inc. v. Emison,311 Ark. 27, 841 S.W.2d 604 (1992). As stated in J. Watkins, Arkansas Freedom of Information Act 9 (2nd ed. 1994), "[i]f a statute does not specifically provide for nondisclosure, the courts will resolve any ambiguity in favor of openness and will not act on their own to create an exception that provides for secrecy."
It is clear that there is no specific provision for nondisclosure of the recorded 911 calls that are required to be maintained under A.C.A. 12-10-310. As noted above, this office has previously concluded that A.C.A. 12-10-317(a)(2) in all likelihood creates an exception to the FOIA with respect to the "subscriber information" that must be forwarded by each service provider to the public service answering points that are equipped for enhanced 911 service. This information may or may not be included on a 911 tape recording, depending upon the particular facts. There is no requirement that it be included.
See A.C.A. 12-10-310(b), supra.
It would, in my opinion, require a strained construction of A.C.A. 12-10-317 to suggest that the legislature intended by virtue of the use limitation in subsection (a)(2) thereof to also create an exception for any such "subscriber information" that may be included on a 911 recording. As noted above, exceptions to the FOIA have historically been narrowly construed. Section12-10-317 clearly does not on its face create an exception with respect to information that is included on a 911 recording. Even if a court was persuaded to apply a balancing approach as reflected in Bryant v. Mars, 309 Ark. 480, 830 S.W.2d 869 (1992) (see Arkansas Freedom of Information Act 10-11, supra), it is my opinion that such an expansive reading of 12-10-317 would be unlikely. It may reasonably be concluded that the legislature intended, by limiting the use of the information that is forwarded under 12-10-317(a)(1), to prevent ready access to this listing of telephone numbers and street addresses. While it is possible that this information could also be gleaned from a 911 tape recording, I cannot conclude that the balance would tip in favor of secrecy, where the information could only be derived from a review of each 911 tape. The legislature's apparent concern regarding the use of subscribers' telephone numbers and street addresses would not, in my opinion, be sufficiently advanced or enhanced through the required removal of this information on a tape by tape basis. It is my opinion that a court would be unwilling to adopt such an expansive reading of12-10-317(a)(2).
In conclusion, therefore, it is my opinion that the subscriber information that is forwarded to the public service answering points by each service provider, in accordance with A.C.A.12-10-317, may be released to the police for law enforcement purposes. It is not, however, generally available to the public. The 911 tape recordings are, in my opinion, subject to public inspection and copying under the FOIA. Section 12-10-317 does not, in my opinion, create an exception to the FOIA in connection with the 911 recordings.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh Enclosures
[1] The only other provisions addressing access to information are found at A.C.A. 12-10-316 (1987) and 12-10-320 (1987). These sections focus specifically on access to files available through the Arkansas Crime Information Center ("ACIC") (see12-10-316(b)), and names and addresses of those service users who have not paid the service charge that may be levied under the Act (see 12-10-320(b)(2)).
[2] The possibility of a separate specific exemption under the FOIA should, however, be considered, depending upon the particular facts. See, e.g., A.C.A. 25-19-105(b)(6) (Supp. 1993) (exempting "[u]ndisclosed investigations by law enforcement agencies of suspected criminal activity.") This determination must be made on a case by case basis, with reference to the surrounding facts and circumstances.